CHARLES KAVIGIAN *vs.* SALVATORE LONERO
(and a companion case [1]).

Middlesex.    November 10, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Motor vehicle, Volunteer, Invited person, Contributory, Assumption of risk.  *Volunteer. Evidence,* Opinion: expert.

One whose services in helping the owner of a stalled automobile to start it were accepted by the owner was not a mere volunteer but a person to whom the owner owed a duty of exercising due care even though the owner did not expressly ask him to help and he was not·to be paid for his services.

Evidence, that, while one familiar with the adjustment of carburetors was helping the owner of a stalled automobile to start it and was pouring gasoline into the carburetor, from the top of which the air cleaner had been removed, the owner, disobeying the helper's instructions, used the starter with the ignition on, whereupon there was a back fire through the top of the carburetor which burned the helper and a bystander watching the operation, warranted a finding of negligence of the owner toward the helper and the bystander and did not require a ruling that the helper had assumed the risk of injury or was guilty of contributory negligence.

An expert familiar with the type of carburetor with which automobiles of a standard make in common use were customarily equipped was properly allowed to give an opinion respecting the cause of an explosion in the carburetor on a certain automobile of that make, although there was no evidence to show specifically the type of that particular carburetor.

TWO ACTIONS OF TORT, the second originally by Henry J. Atkins and after his death prosecuted by the administratrix of his estate.  Writs in the District Court of Somerville dated November 18, 1939.

Upon removal to the Superior Court, the actions were tried before *O'Connell,* J.

*G. E. Thompson* & *E. V. Keville,* for the plaintiffs, were present in court and submitted the case on brief.

*D. H. Fulton,* for the defendant.

RONAN, J.  The defendant's automobile had become stalled in a public way in Somerville.  While Kavigian was

[1] The companion case is by Helen L. Atkins, administratrix, against the same defendant.

attempting to start the motor by priming the carburetor the defendant put his foot upon the starter and a flame of gasoline was emitted from the top of the carburetor, where the air cleaner had been removed, and burnt Kavigian and also Atkins who was standing in the street near the automobile, watching the efforts being made to start it. The jury returned verdicts for the plaintiffs but the judge, under leave reserved and subject to the exceptions of the plaintiffs, ordered verdicts to be entered for the defendant. The defendant has excepted to the introduction in evidence of an opinion given by an expert as to the cause of the emission or explosion of the gasoline, and to the failure of the judge to grant a request, made at the conclusion of the charge, to instruct the jury as to the degree of care the defendant owed Kavigian and Atkins if they were volunteers in undertaking to start the defendant's automobile.

There was evidence that Kavigian was sitting with Atkins on the steps of a house near where the defendant was doing something about the motor of his automobile in an unsuccessful endeavor to start the mechanism, and that the defendant, who knew that Kavigian worked in a garage, requested him to put the motor in operation for him. He informed Kavigian that he had run out of gasoline but had secured five gallons, which were in the tank. Kavigian took off the distributor, told the defendant to turn on the ignition, checked the points, and found there was nothing wrong. He then removed the air cleaner from the top of the carburetor, poured in eight or nine drops of gasoline, which the defendant had given him, replaced the cleaner and told the defendant to get into the automobile and start the motor. The defendant did so but the motor stopped after running for thirty seconds. Kavigian got some more gasoline from the defendant. He again removed the air cleaner and told the defendant not to start the automobile until he had replaced the cleaner. The defendant got into the automobile. While Kavigian was pouring the gasoline, the defendant put his foot on the starter, the fan belt started to revolve, Kavigian heard the backfire in the motor, and a flame burst out from the carburetor, setting fire to his

clothing and causing serious injuries to himself and to Atkins, who was standing in the street with one foot upon the bumper of the automobile. There was also testimony by the defendant that he had the hood up and was looking over the engine when Atkins came along; that Atkins then called Kavigian to come over and "fix the car for him [the defendant]"; that Kavigian came over and attempted to start the motor; and that the defendant thereafter did only what Kavigian directed him to do. It is undisputed that the accident happened immediately after the defendant used the starter. Kavigian had been employed, although not regularly, for eight years in adjusting carburetors and tuning up motors, but he was not familiar with the motors themselves. He testified that a flooded carburetor, backfire from the carburetor, or poor ignition might cause the gasoline to catch fire, but that in his opinion the fire was caused by stepping on the starter when the ignition was on, causing a backfire which escaped through the opening in the carburetor where the air cleaner had been removed. Although this testimony by Kavigian was somewhat shaken in cross-examination, there was no error of law if the jury saw fit to accept it as stating the cause of the accident.

The defendant contends that the evidence shows that the ignition was on in accordance with the directions of Kavigian from the time he first attempted to prime the carburetor, that the explosion could not have happened unless it had been on, that the explosion was attributable to this fact, and that therefore Kavigian was careless. The difficulty with this contention is that the jury could find that the ignition was on from the time Kavigian tested the distributor, or that it was on from the time he first attempted to prime the carburetor, or that it was put on while he was making his second attempt to prime it. Even if the ignition had not been turned off after it had been turned on when the distributor was examined, the jury could find that the ignition alone was not the cause of the accident. They could find that it was not defective when the motor was started and operated for thirty seconds or when the accident occurred. They also had the testimony of the defendant

that the automobile was in perfect working order with the exception of the gasoline gauge. Kavigian had found nothing wrong with the ignition when he tested the distributor. A finding that the ignition system was not defective was not unwarranted. Moreover, the jury, upon the evidence of the defendant, would be warranted in finding that Kavigian made only one attempt to prime the carburetor, and that the defendant did not see that Kavigian had replaced the cleaner when Kavigian told him to get into the automobile, put the ignition on and step on the starter. He then did the things requested by Kavigian. Kavigian might have been pouring gasoline into the carburetor when the defendant commenced to carry out the instructions. His testimony that "he then got in the car, turned on the key and stepped on the starter" could be fairly understood as not only to mean the order in which each was done but also as denoting that he turned on the ignition and applied the starter practically contemporaneously. It could also be found on his testimony that the gasoline caught fire when he stepped on the starter.

The jury could find that the defendant disobeyed the instructions of Kavigian not to start the motor until he had replaced the air cleaner. The defendant had accepted the services of Kavigian who, if not at the express invitation, then at least at the implied invitation of the defendant, was attempting to perform services beneficial to him. Neither Kavigian nor Atkins was a volunteer intruding himself into a matter in which he had no interest and without the knowledge or consent of the defendant. The services of neither were secured by an agent of the defendant who had no authority to hire him. *Lessard* v. *Kneeland*, 257 Mass. 455. *Murphy* v. *Barry*, 264 Mass. 557. *Coulombe* v. *Horne Coal Co.* 275 Mass. 226. *Kowalczyk* v. *Murphy*, 295 Mass. 551. In the cases at bar, the defendant dealt directly with Kavigian, and owed him the duty of taking reasonable care for his safety while Kavigian was undertaking the starting of the defendant's automobile. Whether the defendant failed to exercise this standard of care was for the jury to determine. *Norris* v. *Allen*, 217 Mass. 573. *Lyttle* v. *Monto*,

248 Mass. 340. *Foley* v. *McDonald,* 283 Mass. 96. *Nichols* v. *Rougeau,* 284 Mass. 371. *Streeter* v. *Locke,* 295 Mass. 533. *Donovan* v. *Johnson,* 301 Mass. 12. *Lawson* v. *Royal Riding Stables, Inc.* 305 Mass. 494. And the measure of care he owed Kavigian would not be lessened if it turned out that the latter was not to be paid for his services. *Flynn* v. *Boston & Maine Railroad,* 204 Mass. 141. *Sprague* v. *General Electric Co.* 213 Mass. 375. *Sandon* v. *Kendall,* 233 Mass. 292. *Donovan* v. *Johnson,* 301 Mass. 12. *Lakube* v. *Cohen,* 304 Mass. 156.

The issues of contributory negligence and assumption of risk by Kavigian were properly submitted to the jury. He worked in a garage for a number of years and was familiar with the dangers involved in priming carburetors by introducing gasoline through the aperture made by removing the air cleaner. But he did not intend to have the motor started until he had replaced the cleaner, thus preventing the intake backfire from precipitating burning gasoline from the carburetor. He could to a reasonable extent rely upon the assumption that the defendant would act in accordance with instructions. It could not be ruled as matter of law, with the burden of proof on the defendant, that either contributory negligence or assumption of risk had been established. *Leary* v. *William G. Webber Co.* 210 Mass. 68. *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186. *Engel* v. *Boston Ice Co.* 295 Mass. 428. *Alderman* v. *Noble,* 296 Mass. 30. *O'Brien* v. *Bernoi,* 297 Mass. 271. *Holland* v. *Pitocchelli,* 299 Mass. 554. *Barttro* v. *Watertown Square Theatre, Inc.* 309 Mass. 223. *Burke* v. *Zatoonian,* 309 Mass. 541.

The jury could find that Atkins was a bystander, observing the performance of the work by Kavigian. The defendant's liability to him presented an issue of fact which was properly left to the determination of the jury. *Mahar* v. *Steuer,* 170 Mass. 454. *Runnells* v. *Cassidy,* 307 Mass. 128.

The defendant excepted to that portion of the charge in which the jury was instructed that if Kavigian did the work without being asked by the defendant he would have the right to expect that the defendant would not act negligently.

Whether Kavigian was expressly invited by the defendant to aid him in starting the motor or whether he undertook the work at the request of Atkins, it is undisputed that the defendant accepted his services and was engaged with him in performing the work when the accident happened. As we have said, the defendant was obliged to exercise due care toward him. The instructions when applied to the evidence were free from error.

The second exception of the defendant is to the action of the judge in permitting an expert, who testified that he was familiar with the usual type of carburetor with which an automobile of the make, type of engine, and year of manufacture as that of the defendant's automobile was equipped, to give his opinion as to the cause of the explosion. There was no evidence of the particular type of carburetor on the defendant's automobile, but the evidence showed its manufacture, the kind of engine, the year of its manufacture and the type of body. There was no question but that this automobile was of a standard make in common use. The expert could rightly assume that this automobile was equipped with the general type of carburetor usually furnished upon such automobiles. There was no error in permitting him to express an opinion. *Lucier* v. *Norcross*, 310 Mass. 213.

The exceptions of the plaintiffs to ordering verdicts entered for the defendant are sustained; the exceptions of the defendant are overruled and judgments are to be entered in accordance with the verdicts returned by the jury.

*So ordered.*