ELLIOTT GOLDBERG *vs*. NORTON COMPANY.

Suffolk. February 5, 1957. — March 29, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Negligence*, Crane, Contributory, Assumption of risk.

Evidence of the circumstances in which an electric overhead crane operated inside a brightly lighted building by an employee of its owner struck and injured a workman who for half an hour had been standing at work on an I beam close to the rails of the crane in full view of the crane operator and other employees of the owner warranted a finding that the operator was negligent toward the workman, and did not require a ruling that the workman was guilty of contributory negligence or had voluntarily assumed the risk of such injury.

TORT. Writ in the Superior Court dated March 2, 1953. The action was heard by *Murray*, J., without jury.

*Thomas H. Mahony,* (*George T. Padula* with him,) for the defendant.

*Samuel P. Sears,* (*Albert R. Mezoff* with him,) for the plaintiff.

COUNIHAN, J.   This is an action of tort to recover for personal injuries sustained by the plaintiff on August 12, 1952, because of the negligence of the servants or agents of the defendant.   The answer was a general denial, contributory negligence, and voluntary assumption of risk.   The action was tried before a judge, sitting without jury, who found for the plaintiff.   The action comes here upon an exception of the defendant to the denial of a request that, upon the pleadings and the evidence, the plaintiff was not entitled to recover.   There was no error.

The only evidence came from the plaintiff and the defendant's answers to interrogatories of the plaintiff.   From this it appears that early in 1952 the defendant had engaged a general contractor to construct a building for it in Worcester.   The contractor sublet the job of putting corrugated metal siding on the outside wall of the building to the Federal Sheet Metal and Roofing Co. (Federal).   The plaintiff was employed as a sheet metal worker by Federal.

On August 12, 1952, at about 10:15 A.M. the plaintiff was engaged in covering a hole or opening in the side of the building with a piece of corrugated metal.   This hole was about six feet by three feet in size.   It had been left open four weeks earlier, when Federal had practically completed its work, to permit temporary electric cables to enter the building.   The lower part of the outside wall was brick and above the brick were windows.   Above the windows were corrugated metal sheets or sidings.   The hole or opening was twenty feet above the ground.

Originally the plaintiff and his fellow workers covered the outside wall by using a staging suspended from the roof from which a worker fastened the sheets of metal on the outside wall with a bolt.   Another worker on a rolling staging inside the building fastened the bolts on the inside with nuts.   On the day of the accident, because of the installa-

tion of machinery and equipment by the defendant, it was not possible to use a rolling staging inside the building. Consequently the plaintiff and a fellow worker placed a ladder on the ground outside of the building with the top of the ladder extending through the hole into the building. The plaintiff climbed the ladder and entered the building through the hole.

He stood upon an I beam eight inches wide which rested against the inside wall about two feet below the rails upon which an overhead crane was operated. These rails were about twenty feet above the floor. The crane was operated electrically by a control box suspended from the crane by a cable to a point five feet above the floor. An employee of the defendant governed the operation of the crane by means of the control box. The crane made noise when in operation. On the morning of the accident the plaintiff had been standing on the I beam for a half hour before the accident happened. He had an unobstructed view of the crane and the control box and he frequently looked in their direction and listened to ascertain whether the crane was in motion. If the crane began to move he could flatten himself against the wall so that the crane could safely pass him.

Immediately prior to the occurrence of the accident the plaintiff was standing on the I beam with his back to the crane. He stooped over with his head and shoulders through the hole to pull up a rope to which a sheet of corrugated metal was attached. While in this position he was struck on the right thigh by the crane which had moved toward him. He was dragged along the inside wall scraping the back of his thigh against an upright girder. The crane moved about ten to fifteen feet after hitting him. At that time there were employees of the defendant working in the area of the building where the plaintiff was hurt. The "condition of the lighting in the building was very good, all the lights were on." The plaintiff did not see or hear the crane in motion while he was inside the building on the morning of the accident.

The defendant's exception to the denial of its request for

ruling properly presents for consideration the question of the negligence of the defendant and the question of contributory negligence or voluntary assumption of risk by the plaintiff.

We are of opinion that the evidence warranted a finding by the judge, as the trier of the facts, that the defendant's employee was negligent in the operation of the crane which struck the plaintiff. The accident happened in a brightly lighted building on the floor of which employees of the defendant were working. The hole or opening through which the plaintiff entered the building was only twenty feet above the floor and the top of the ladder which the plaintiff had climbed extended through this hole into the building. After the plaintiff entered the building he stood for a half hour upon an I beam, eight inches wide, which was against the inside wall and about two feet below the rails upon which the crane operated. The plaintiff had an unobstructed view of the crane and the control box which governed its movements, and the judge could reasonably infer that the crane operator and other employees of the defendant had an unobstructed view of him. He frequently looked at the crane and listened for noise of its movement so that, if necessary, he could flatten himself against the wall to permit the crane to pass if it moved in his direction. He saw and heard nothing to indicate that the crane was in motion. The judge could reasonably find that the crane moved slowly, and that it was at all times under the control of the crane operator who could bring it to a stop almost immediately if occasion required. Ordinary prudence would dictate that the crane operator should make some observations before starting the crane to ascertain whether anyone was in a position of danger. It is plain that the operator did not look or, if he did, he looked carelessly. In either case such conduct could be found to constitute negligence.

The defendant argues that it had no reason to know that the plaintiff was in a place of danger when the crane began to move. It relies to a certain extent upon *Murray* v. *Boston & Maine Railroad,* 216 Mass. 591, 593. That case is distinguishable for there the plaintiff and the defendant's

employees were on different floors of the same building and the defendant's employees from the position they were in could not ascertain whether the plaintiff was in a position of danger. In the case at bar, even if the defendant had no notice that the plaintiff was to be in this place of danger, the plaintiff was in this position for a half hour before the accident, in full view of the operator of the crane. The judge could reasonably find that the accident could have been avoided if the plaintiff had been given any signal or warning that the crane was to be put in motion. We think that the case at bar is governed by what was said in *Engel* v. *Boston Ice Co.* 295 Mass. 428, in which the facts closely resemble those in the instant case.

It could not rightly have been ruled as matter of law that recovery by the plaintiff was barred because of contributory negligence or the voluntary assumption of risk. The burden of establishing either contributory negligence or voluntary assumption of risk is on the defendant. *Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503, 505. *Engel* v. *Boston Ice Co.* 295 Mass. 428, 435. See *Ryan* v. *Gray,* 316 Mass. 259; *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186, 189–190.

"An employee does not voluntarily assume the risk of injury unless the employer upon whom the burden rests proves that the cause of the injury was so open and obvious that it was known to the employee and that the nature and character of the risk were such that the employee must have fully appreciated the danger that might arise therefrom." *Ryan* v. *Gray, supra,* at page 261.

In the instant case the plaintiff found a place to stand while working. He saw the crane a little distance away standing still. It could not be ruled as matter of law that the plaintiff assumed the risk that the crane would be put in motion without any signal or warning to him.

*Exceptions overruled.*